UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DAVID DINGMAN and JULI
DINGMAN, on behalf of L.A.D.,
a minor,

        Plaintiffs,

v.

ATHENS AREA SCHOOL DISTRICT,

        Defendant.

_____/

Case No. 1:04-CV-832

Hon. Richard Alan Enslen

**OPINION**

      There is much in this life which is sad and disappointing, but is not the stuff of which federal lawsuits are made. The robes of the judiciary are many things, but they are not the badges of a hall monitor.

**BACKGROUND**

      This lawsuit was originally filed with the Calhoun County Circuit Court and removed to this Court because of the allegation of federal claims. Defendant Athens Area School District has requested dismissal of Plaintiffs' Complaint. Plaintiffs David Dingman and Juli Dingman, on behalf of their minor child, L.A.D., have sued Defendant Athens Area School District under 42 U.S.C. § 1983 and state law. Oral argument is unnecessary.

      The suit arises from the aftermath of student-on-student violence occurring in the school sixth-grade band room on November 21, 2002. According to the student, L.A.D., she was assaulted by three female students who struck her in the stomach by swinging a trombone case pendulum-style from behind a door casement. (L.A.D. Dep. at 7-8, 13.) The attack was, according to L.A.D.,

retaliation because she had talked to the boyfriend of one of the girls. (*Id.* at 12-13.) The assault knocked the wind out of L.A.D., but did not cause her any physical injury or require any medical treatment. (*See* Compl., ¶¶ 6-9; L.A.D. Dep. at 7-15; Juli Dingman Dep. at 72.) The attack did, however, apparently cause L.A.D. to suffer emotional distress for which she sought psychological care. (Juli Dingman Dep. at 15-16.) The day following the incident, L.A.D. reported the incident to the band teacher, another teacher, and the school principal, Joseph Chambers. (L.A.D. Dep. at 24-27.)

On the night of November 21, 2002, L.A.D. reported the assault to her mother, Juli Dingman. (*Id.* at 29.) Juli Dingman later learned from the principal, Joseph Chambers, that the school was assessing discipline against only one of the three girls involved in the incident. (David Dingman Dep. at 34-35.[1]) According to Juli Dingman, she told Chambers that she would report the matter to police if Chambers "didn't get to the bottom of what happened." (Juli Dingman Dep. at 117.) The same communication was made to another school employee, a Mr. Watson, on the same day. (*Id.* at 116-17.[2]) Following Dingman's conversation with Chambers, one of the girls called Juli Dingman to express distress about Dingman contacting the police. (*Id.* at 118.) Juli Dingman did

---

[1]This testimony is hearsay and technically inadmissible, though there is no dispute concerning this testimony.

[2]Juli Dingman testified that within hours of the conversations "all the kids knew" of her expressed intention. (Juli Dingman Dep. at 116.) However, it does not appear from the record that she had any personal knowledge concerning what school children in the school knew at that time–other than her daughter and one telephone caller (whom she had knowledge of because of admissions they made to her). Thus, this testimony is not properly received as to what "all the kids knew."

contact police (Compl., ¶ 19) and, apparently, juvenile proceedings were later brought against the attackers concerning the trombone incident.[3]

After the trombone incident, things did not go well for L.A.D. in sixth grade. She was ostracized and teased by girls at school, threatened by classmates that she would be sued, and observed other girls playing hangman using her name. (*See* L.A.D. Dep. at 18-21; Juli Dingman Dep. at 112, 116.[4]) L.A.D. also faced problems from the school administration. In one incident, she received an unwarranted in-school suspension for not attending a proper detention[5] caused by the school's faulty notice. (Compl., ¶ 27.) In another incident, a teacher identified her in front of her class as a student needing special mentoring for spelling. (L.A.D. Dep. at 31-33.) On another day, she was sent home during school hours to remove blue coloring from her hair because it was inconsistent with the school dress code. (L.A.D. Dep. at 39-41.) The student principal was also

---

[3]Juli Dingman has testified that the girls would lash out against L.A.D. at the time of juvenile proceedings, though it does not appear that Juli Dingman has any personal knowledge of those events. (*See* Juli Dingman Dep. at 130.) She did have personal knowledge that a school teacher and the school counselor contacted her to tell her to stay out of these matters (s*ee* Compl., ¶¶ 17 & 25), though such contacts are hardly retaliation and were not directed against L.A.D.

[4]The obvious problem with Juli Dingman's supporting testimony concerning school events is that Juli Dingman was not, for the most part, present during school hours to observe the treatment. Therefore, except as to when she was present, she cannot testify as to the treatment because she lacks personal knowledge of the treatment.

[5]The detention was given because of a verbal argument. Plaintiffs have not contended that detention was improper for the argument, but have contended that the school treated L.A.D. "selectively" in that the other boy involved in the argument did not receive discipline. However, Plaintiffs have not supplied enough information as to the incident from which one could conclude that the boy was "similarly situated" so as to make the incident a denial of Equal Protection Clause rights. Further, there is nothing in the record to suggest that any difference in treatment was irrational or was because of some suspect classification, including a history of protected conduct. Plaintiffs make a similar "selective treatment" argument as to the hair incident–which fails for the same reason.

"hostile" to Juli Dingman during a meeting to discuss special educational services for L.A.D.[6] (Juli Dingman Dep. at 139). On the last day of school, the school principal allegedly denied L.A.D. the use of a bronchial inhaler.[7] (David Dingman Dep. at 40.) Following the school year, LA.D.'s parents moved her to another school system. (Pls.' Br. at 3.)

## STANDARDS FOR SUMMARY JUDGMENT

This Motion was filed pursuant to Federal Rule of Civil Procedure 12(b)(6) based on the allegations of the Complaint. However, Plaintiffs, in response, raised factual issues by reference to deposition testimony and other matters outside the pleadings. *See* Fed. R. Civ. P. 12(b). As such, the motion will be treated as one brought under Rule 56. *Id.*

Under the language of Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts

---

[6] This claimed retaliation is not sufficiently severe to constitute retaliation because it would not deter a person of ordinary firmness from the conduct in question. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). Additionally, this conduct is irrelevant because Plaintiffs have only brought claims on behalf of their daughter; they have not sued in their own capacity for treatment directed toward them. The same is true regarding the claim of Ms. Dingman that Defendant retaliated against her by calling her employer.

[7] This incident is the most serious of the alleged retaliation. However, the problem with the supporting testimony is that it barely mentions the incident and fails to describe any of the circumstances surrounding the incident. Thus, there is no testimony from one which one could conclude that the denial of an inhaler was anything other than a proper response of the school district (*e.g.*, due to lack of parental approval forms, *et cetera*). There is also nothing in the record to connect this incident, on the last day of school, to the earlier complaints.

to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If, after adequate time for discovery on material matters at issue, the non-movant fails to make a showing sufficient to establish the existence of a material disputed fact, summary judgment is appropriate. *Celotex Corp.*, 477 U.S. at 323. .

In assessing evidence, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). Moreover, affidavits must meet certain requirements:

> [A]ffidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Fed. R. Civ. P. 56(e).

In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving

a Rule 56 motion, the Court should not consider unsworn or uncertified documents, *Id.*, unsworn statements, *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991), or hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994). As noted above, some of the deposition testimony offered to support Plaintiffs' claims does not meet the Rule 56(e) standards because either the testimony is hearsay in nature and/or the testimony is not based upon personal knowledge.

## **LEGAL ANALYSIS**

Plaintiffs' Brief makes clear that the federal claims asserted are premised solely on the theory that Defendant retaliated for protected conduct in violation of L.A.D.'s First Amendment rights[8] and 42 U.S.C. § 1983.[9] So christened, this legal craft goes to sea and promptly sinks.

To begin, the real gist of this lawsuit is the student-on-student violence occurring on November 21, 2002. Defendant properly argues that this violence is not the source of a constitutional claim, because there is no constitutional duty to protect against unforeseen student-on-student violence, citing *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 732 (8th Cir. 1993). Plaintiffs concede this point (Pls.' Br. at 8), but argue that Defendant violated the constitution by

---

[8]The Complaint describes the allegation as Fourteenth Amendment retaliation, though the Sixth Circuit has said that such a claim is better described as a First Amendment retaliation claim under the Petition Clause of the First Amendment. *See Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1226-27 (6th Cir. 1997).

[9]Plaintiffs' Complaint appears to refer to the Rehabilitation Act of 1973 (29 U.S.C. § 791 *et seq.*) and the Individuals with Disabilities Education Act (20 U.S.C. § 1401 *et seq.*). However, Plaintiffs in their Brief, maintain that they are not asserting jurisdiction under those statutes. (Pls.' Br. at 11.) Had Plaintiffs so intended, the claims would be dismissed due to lack of exhaustion and because of insufficient evidence of a disability. The Complaint also mentions 42 U.S.C. §§ 1985 and 1986, but fails to include any legal theory to establish liability as to these code sections, nor is any theory or argument of liability under these sections advanced in Plaintiffs' Brief.

retaliating against L.A.D. after her parents made a written complaint to the school and informed school officials that the police would be contacted.

Plaintiffs' argument suffers from manifold deficiencies. The first is that "the right to petition is limited to matters of public concern." *Valot*, 107 F.3d at 1226 (citing *White Plains Towing Cor. v. Patterson*, 991 F.2d 1049, 1059 (2d Cir. 1993)); *see also. Dambrot v. Cent. Mich. Univ.,* 55 F.3d 1177, 1186 (6th Cir. 1995); *Barnes v. McDowell,* 848 F.2d 725, 733 (6th Cir. 1988). In this case, the complaints to police and the school were communicated in a private manner to remedy a specific personal issue. As such, the petition is properly regarded as a private one and not protected conducted.

Nevertheless, even were the conduct deemed protected conduct, there has not been sufficient proof of retaliatory conduct that was causally related to the making of complaints. As is apparent, the bulk of the conduct of which L.A.D. complains was student conduct. Plaintiffs attempt to save their case by making the fabulous claim that the school "act[ed] through proxies to . . . harass [the] student . . ." (Pls.' Br. at 7.) This charge of a Machiavellian conspiracy (that the principal was using students to harass L.A.D.) belongs more to pulp fiction for adolescents than it does in legal papers. What is the evidence that any administrator or policy maker of the school district encouraged students to harass L.A.D.? The answer is that the record simply fails to support the charge. No witness has testified that they were encouraged to do so and the incidents which Plaintiffs' counsel describe in their Brief as supporting this theory only do so by compounding unwarranted inferences as to unrelated incidents.[10] *See also Doe v. Claiborn County, Tenn.*, 103 F.3d 495, 507-09 (6th Cir.

---

[10]One of the arguments made in support of this fanciful theory is that students learned soon after Juli Dingman's private conversation with Chambers about her threat to involve the police. However, the testimony does not support any inference as to how they learned the

1996) (rejecting vicarious liability for acts of teachers in the absence of proof of custom, policy or deliberate indifference); *Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2001) (same).

As to the school administrators' conduct, there is no evidence of retaliation which was casually related to the complaints. The in-school suspension given to L.A.D., though it may have been unjust, occurred in connection with an acknowledged verbal argument and not in connection with the making of the complaints. The other acts of school administrators and teachers likewise appear to relate to separate incidents which have no bearing on the complaints at issue.[11] As such, summary judgment is warranted because there is no proof of retaliation which is causally related to the making or threatened making of complaints.

For these reasons, all Plaintiffs' federal law claims will be dismissed.

**STATE LAW CLAIMS**

Plaintiffs have also made state law claims of negligence and violation of the Elliott Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.,* against Defendant as to the treatment of L.A.D. Defendant has requested dismissal of these claims due to immunity.

As to the state law claims, the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Nevertheless, since the only federal law claims asserted will be dismissed, § 1367(c)(3) authorizes this Court to decline to exercise jurisdiction over the state law claims. The Court believes that the interests of justice and comity would be best served by the state court's resolution of the

---

information–*i.e.*, whether they learned it by overhearing it or something else. Such testimony certainly does not support an inference that students were carrying out a malicious plot at the behest of the school administration.

[11] As noted above, Plaintiffs also fail to provide sufficient evidence or allegations as to many of the incidents.

remaining state law issues and therefore, the Court will remand the remaining state law claims to the Calhoun County Circuit Court for resolution. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988); *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754 (6th Cir. 2000).

## **CONCLUSION**

Consistent with the Court's Opinion, an Order and Partial Judgment shall enter dismissing all federal law claims and remanding the remaining state law claims to the Calhoun County Circuit Court.

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>April 22, 2005 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>UNITED STATES DISTRICT JUDGE |